UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GAIL BJORKLUND,
    *Plaintiff*,

v.

THE GOLUB CORPORATION,
    *Defendant*.

No. 3:18cv1271 (MPS)

**RULING ON MOTION FOR SUMMARY JUDGMENT**

Plaintiff Gail Bjorklund alleges that her former employer, the Golub Corporation ("Golub"), discriminated against her on the basis of sex and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.* Defendant Golub moves for summary judgment. (ECF No. 21.) For the reasons discussed below, the motion for summary judgment is GRANTED.

**I.    BACKGROUND**

The following facts, which are taken from the parties' Local Rule 56(a) Statements and the exhibits, are undisputed unless otherwise indicated.

Defendant Golub operates grocery stores under the name Price Chopper. (ECF No. 23 at ¶ 1; ECF No. 38-2 at ¶ 1.)[1] Bjorklund, who is over forty, worked as a fulltime food service clerk in the food court in Golub's Bristol, Connecticut store. (Compl. ¶ 16; Answer ¶ 16; ECF No. 23 at ¶¶ 2-3; ECF No. 38-2 at ¶¶ 2-3.) Her job duties included cooking various foods, making party trays, and waiting on customers. (ECF No. 38-4 at 10.) One of the foods she was responsible for cooking was chicken, which presented special challenges with respect to food safety. (ECF No.

---

[1]Citations are to the CM/ECF system's assignment of page numbers rather than counsel's assignments, to the extent that the two paginations differ.

23 at ¶ 12; ECF No. 38-2 at ¶ 12.) As part of her job, Bjorklund was required to record in a logbook the temperature of food she cooked and the time she measured the temperature. (ECF No. 23 at ¶¶ 5-6, 9, 14, 16; ECF No. 38-2 at ¶¶ 5-6, 9, 14, 16.) The logbook consisted of pre-printed, formatted forms. (ECF No. 23 at ¶ 15; ECF No. 38-2 at ¶ 15.) Bjorklund's supervisor, Todd Griffin, spoke to the entire department on several occasions about the importance of maintaining the logbooks. (ECF No. 23 at ¶ 17; ECF No. 38-2 at ¶ 17.) Bjorklund had previously been warned for failing to record the temperatures of food. (ECF No. 24 at 14.) In November 2016, she was given a written warning for a logbook violation. (ECF No. 38-7.) On that occasion, instead of writing down the temperature and the time she measured the temperature, Bjorklund wrote down the time twice and failed to write down the temperature. (ECF No. 23 at ¶ 22; ECF No. 38-2 at ¶ 22.) Failure to document the temperature violated the company's rules. (ECF No. 23 at ¶ 22; ECF No. 38-2 at ¶ 22.) Griffin also received a written warning as a result of Bjorklund's November 2016 logbook violation. (ECF No. 23 at ¶¶ 19, 21; ECF No. 38-2 at ¶¶ 19, 21.)[2]

On May 30, 2017, Griffin inspected the logbook. (ECF No. 23 at ¶ 28; ECF No. 38-2 at ¶ 28.) He discovered that although Bjorklund had cooked food, she had not recorded any times or temperatures in the logbook. (ECF No. 23 at ¶ 28; ECF No. 38-2 at ¶ 28.) When Griffin asked her about the missing information, Bjorklund did not deny that she had not written down the times and temperatures in the logbook. (ECF No. 23 at ¶ 31; ECF No. 38-2 at ¶ 31.) Instead, she said she was going to write them down after she finished doing something else rather than logging them

---

[2] Although Bjorklund's Local Rule statement indicates that she denies this statement, she cites no evidence that would support that denial but instead makes the separate point that Griffin "was ultimately responsible for the completion of the logbook, and he refused to adequately staff the department." (ECF No. 38-2 at ¶ 21); *See* L.R. 56(a)1 ("Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted . . . unless such fact is controverted by the Local Rule 56(a)2 Statement . . . .").

contemporaneously with measuring the temperatures. (ECF No. 23 at ¶ 31; ECF No. 38-2 at ¶ 31.) Bjorklund then went over to the logbook and started filling it out. (ECF No. 23 at ¶ 33; ECF No. 38-2 at ¶ 33.) Griffin told Bjorklund that she could not fill out the logbook in that manner. (ECF No. 23 at ¶ 34; ECF No. 38-2 at ¶ 34.) Bjorklund responded that "I know what I'm doing. I know the logs. I know the temperatures and the product and what's out there." (ECF No. 23 at ¶ 34; ECF No. 38-2 at ¶ 34.) According to Bjorklund, Griffin failed to adequately staff the department and left Bjorklund alone to handle the whole food court. (ECF No. 38-4 at 31.) Bjorklund contended that she could not get to the logbooks because she was busy with other job duties. (ECF No. 23 at ¶ 35; ECF No. 38-2 at ¶ 35.) Griffin did not believe her because she should have logged the times and temperatures before putting the food out. (ECF No. 23 at ¶ 35; ECF No. 38-2 at ¶ 35.) Because Griffin could not validate the food that had been put out, he had to dispose of it. (ECF No. 23 at ¶ 36; ECF No. 38-2 at ¶ 36.)

Griffin told the store manager, Brad Schmidt, about Bjorklund's violation of store policy. (ECF No. 23 at ¶ 37; ECF No. 38-2 at ¶ 37.) Schmidt inspected the logbooks and confirmed that they were not filled out. (ECF No. 23 at ¶ 38; ECF No. 38-2 at ¶ 38.) Neither Griffin nor Schmidt believed that Bjorklund had actually checked the temperature of the food that day. (ECF No. 23 at ¶¶ 40-41; ECF No. 38-2 at ¶¶ 40-41.) Schmidt photographed the log and sent the picture to Human Resources. (ECF No. 23 at ¶ 38; ECF No. 38-2 at ¶ 38.) He called Human Resources and informed them about the situation. (ECF No. 23 at ¶ 38; ECF No. 38-2 at ¶ 38.) Griffin was not involved in discussions with Human Resources. (ECF No. 38-1 at 11; ECF No. 38-6 at 15.)

Schmidt testified that Bjorklund told him that she had written the information down on a separate piece of paper. (ECF No. 38-5 at 11.) But Bjorklund did not dispute the fact that she had not written the information in the log. (ECF No. 23 at ¶ 31; ECF No. 38-2 at ¶ 31.) Bjorklund

3

was suspended for three days. (ECF No. 23 at ¶¶ 26, 38, 49; ECF No. 38-2 at ¶¶ 26, 38, 49.) Griffin later discovered that Bjorklund had subsequently filled out the logs "while off the clock." (ECF No. 23 at ¶ 56; ECF No. 38-2 at ¶ 56.)

An investigation followed to determine whether or not she should be terminated. (ECF No. 23 at ¶ 38; ECF No. 38-2 at ¶ 38.) Golub terminated Bjorklund's employment effective June 2, 2017. (ECF No. 38-7.) Although Schmidt was in the meeting during which Bjorklund was terminated, Human Resources made the decision to terminate Bjorklund's employment. (ECF No. 38-5 at 19; ECF No. 23 at ¶ 42; ECF No. 38-2 at ¶ 42.) Golub's documentation stated that the reason for Bjorklund's termination was violation of "work rules policy": "falsification of records." (ECF No. 38-7.) Golub had terminated another employee - in a different store – in "the same fact pattern." (ECF No. 23 at ¶ 43; ECF No. 38-2 at ¶ 43.)

Bjorklund sought review of Golub's decision through its review procedure. (ECF No. 23 at ¶ 53; ECF No. 38-2 at ¶ 53.) As grounds, she indicated that she "put times and temps in the book" but was "flustered and wrote down [the] wrong times by mistake." (ECF No. 23 at ¶ 53; ECF No. 38-2 at ¶ 53.) She stated that she might have written 2:00 pm when she meant 2:30 pm. (ECF No. 23 at ¶ 53; ECF No. 38-2 at ¶ 53.) Human Resources attended the review meeting and created a memo memorializing the result. (ECF No. 23 at ¶ 54; ECF No. 38-2 at ¶ 54.) In that meeting, Bjorklund stated that she "knew" the correct temperatures and times. (ECF No. 23 at ¶ 54; ECF No. 38-2 at ¶ 54.) Bjorklund was offered a part-time job "in a department where logs are not required." (ECF No. 33 at 3.) Golub did not pay Bjorklund her accrued vacation benefits. (Compl. ¶ 35; Answer ¶ 35.)

After Bjorklund's termination, Griffin had to "backfill" her position with existing personnel. (ECF No. 23 at ¶ 58; ECF No. 38-2 at ¶ 58.) Griffin selected a male part-time employee

who was in his fifties to perform her duties. (ECF No. 23 at ¶ 58; ECF No. 38-2 at ¶ 58; ECF No. 36-6 at 24; ECF No. 25 at 14.)³ The food court department continues to employ a woman who is the same age as Bjorklund. (ECF No. 23 at ¶ 63; ECF No. 38-2 at ¶ 63.)

Bjorklund complains of a number of perceived incidents of gender and age bias during her tenure at Golub. According to Bjorklund, she and other older female employees were not permitted to participate in advancement programs while younger employees were selected. (ECF No. 38-4 at 15.) Bjorklund also testified that Griffin treated female employees differently – specifically, he yelled at women but laughed and joked with men. (ECF No. 38-4 at 17-18.) He yelled at Bjorklund in front of customers, made a female employee cry, and yelled at another. (ECF No. 38-4 at 18-20.) According to Bjorklund, Griffin, Schmidt, and another male manager sat together at lunch and acted "like a boys' club." (ECF No. 38-4 at 36.) When Bjorklund would put her reading glasses on, Schmidt would point at her glasses and laugh. (ECF No. 38-4 at 36-37.)

Bjorklund testified that, at some point before November 2016, Schmidt told her, "New hires are easy to mold and change to get to do what we want where" -- and pointing at Bjorklund -- "you older hires resist change." (ECF No. 38-4 at 27, 30.) Schmidt also stated that he was "going to take the store in a new direction" and that "lots of changes" were coming. (ECF No. 38-5 at 16; ECF No. 38-4 at 32-33.)

Bjorklund claims that other employees violated company policy but were not terminated. Specifically, a 24 year old man named Nick Paitaris used profanity at a customer but was not

---

³ Bjorklund states that one of the part-time employees who filled her position was a 24-year-old male employee named Nick Paitaris. But the portion of Griffin's testimony she cites to support this statement does not support it. *See* ECF No. 38-6 at 19-21 (discussing Nick Paitaris but not stating that he assumed Plaintiff's duties or otherwise replaced her when she was terminated.)

5

terminated. (ECF No. 38-4 at 23-25; ECF No. 38-5 at 14.) In addition, Griffin failed to comply with the rule requiring logging of temperatures but was not terminated. (ECF No. 38-1 at 10.)

## II. LEGAL STANDARD

"Summary judgment is appropriate only if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (internal quotation marks and citations omitted). "A genuine dispute of material fact exists for summary judgment purposes where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury could decide in that party's favor." *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013). In reviewing the summary judgment record, a court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Caronia v. Phillip Morris USA, Inc.*, 715 F.3d 417, 427 (2d Cir. 2013). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

## III. DISCUSSION

Bjorklund's Title VII and ADEA discrimination claims are analyzed using the *McDonnell Douglas* burden-shifting framework. *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

### A. Prima Facie Case

Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination, *Ruiz v. County of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010), the

requirements of which are "minimal." *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 128 (2d Cir. 2012) (citations omitted). "To establish a prima facie case of sex or age discrimination, an employee must show that (1) she belongs to a protected class or age group, (2) she was qualified for her position, (3) her employer took adverse action against her, and (4) the adverse action occurred in circumstances giving rise to an inference of discrimination." *Reichert v. Perdue*, 786 F. App'x 294, 297 (2d Cir. 2019). I assume, without deciding, that Bjorklund has established a prima facie case of sex and age discrimination.

**B.     Legitimate, Non-Discriminatory Reason**

At the second step, the burden shifts to Golub to articulate a legitimate, non-discriminatory reason for Bjorklund's termination. *Terry*, 336 F.3d at 138. The defendant's burden at this step in the analysis is "light." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998). The Court "do[es] not decide whether a defendant's proffer is credible or convincing," but "ask[s] only whether defendant has adduced evidence that, taken as true, would permit the conclusion that there was a nondiscriminatory reason." *Kennedy v. Related Mgmt.*, 403 F. App'x 566, 568 (2d Cir. 2010) (internal quotation marks and emphasis omitted). "The employer need not persuade the court that it was motivated by the reason it provides; rather, it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway*, 143 F.3d at 52 (emphasis omitted).

Golub offers ample evidence of a legitimate, non-discriminatory basis for Bjorklund's termination – her falsifying records by filling out time and temperature logs while off the clock and well after the food had been cooked and placed in the display, despite prior notice of a log violation. (ECF No. 23 at ¶¶ 23, 31, 32, 40, 41, 56.) If true, this explanation and supporting evidence "would connote lawful behavior." *Greenway*, 143 F. 3d at 52.

7

**C.     Pretext**

   **1.     Bjorklund's Sex Discrimination Claim**

Because Golub has put forth a legitimate, non-discriminatory reason for terminating Bjorklund's employment, the burden shifts back to Bjorklund to "present evidence that would permit a rational factfinder to infer that the reasons for [her] [termination] were pretextual." *Isaac v. City of N.Y.*, 271 F. App'x 60, 63 (2d Cir. 2008). "[T]o defeat summary judgment within the *McDonnell Douglas* framework . . . the plaintiff is not required to show that the employer's proffered reasons were false or played no role in the employment decision, but only that they were not the only reasons and that the prohibited factor was at least one of the motivating factors." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 123 (2d Cir. 2004) (internal quotation marks and citations omitted).[4] *See Reichert v. Perdue*, 786 F. App'x 294, 297 (2d Cir. 2019)("The employee must thus show both that there was a pretext and that the pretext was intended to mask an illegal or discriminatory motive.")  In evaluating whether Bjorklund has met her burden, I must "examine the record as a whole, just as a jury would, to determine whether a jury could reasonably find an invidious discriminatory purpose on the part of an employer." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 102 (2d Cir. 2001).  The plaintiff "bears the ultimate burden of persuasion, and must adduce enough evidence of discrimination so that a rational fact finder can conclude that the adverse job action was more probably than not caused by discrimination." *Back*, 365 F.3d at 123 (internal quotation marks and citations omitted).

In her challenge to Golub's reasons for termination, Bjorklund does not deny that she did not contemporaneously write the times and temperatures in the logbook, that she later wrote in

---

[4] As discussed below, however, an ADEA claim also requires proof that the prohibited factor was the but-for cause of the adverse employment action.

times and temperatures while "off the clock", that neither Griffin nor Schmidt actually believed that she took the temperature of the food, or that the food had to be discarded. (ECF No. 23 at ¶¶ 31, 36, 40-41; ECF No. 38-2 at ¶¶ 31, 36, 40-41.) Bjorklund argues, however, that the reason given on her termination form – falsifying the time and temperature log – is simply "not true." (ECF No. 38-1 at 23.) According to Bjorklund, she never admitted that she: (1) did not check the temperature of the food she cooked and/or (2) "falsif[ied] the time and temperature logs." (ECF No. 38-1 at 9, 24.) Citing Schmidt's testimony, Bjorklund maintains that she knew the temperature of the food she cooked and wrote the information down on a piece of paper. (ECF No. 38-5 at 11.) She also asserts that Griffin left her short staffed in the department, and "set [her] up to fail." (ECF No. 38-1 at 24.)

Bjorklund's argument fails to show pretext because "the factual validity of the underlying imputation against the employee is not at issue"; rather, the relevant question is "what 'motivated the employer.'" *McPherson v. New York City Dept. of Educ.*, 457 F.3d 211, 216 (2d Cir. 2006) (quoting *United States Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). The court is "decidedly not interested in the truth of the allegations against plaintiff." *Id.* Even if Bjorklund's version is true – that she did measure the temperature and record the information on a separate piece of paper – this does not show that Golub's belief that she did not comply with company policy (a belief she does not dispute) and later wrote information in the logs to cover her tracks was pretext for discriminatory animus. "As long as an employer has a good faith belief that an employee engaged in misconduct, the fact that the employer is actually wrong is insufficient to show that the alleged misconduct is a pretext for discrimination." *Maynard v. Stonington Cmty. Ctr.*, No. 3:15CV483(RNC), 2018 WL 1633709, at *5 (D. Conn. Mar. 31, 2018) (internal quotation marks omitted).

Bjorklund states that Griffin, Schmidt, and another male manager sat together at lunch and acted "like a boys' club." (ECF No. 38-4 at 36.) This description does not suggest that Golub's stated reasons for terminating Plaintiff's employment were pretextual, and it is too vague to suggest that the termination decision, which Bjorklund admits was made by Human Resources, ECF No. 38-2 at ¶ 42, was motivated by gender bias. Bjorklund also argues that the same three men "mocked" her appearance. (ECF No. 38-1 at 25.) Specifically, Bjorklund testified that when she would put her reading glasses on, Schmidt would point at her glasses and laugh. (ECF No. 38-4 at 36-37.) This is rude behavior but it does not by itself suggest gender-based or age-based bias. Nor does it suggest that Golub's reasons for terminating Plaintiff were pretextual.

Bjorklund also points to evidence that Griffin treated female employees differently. (ECF No. 38-4 at 17.) Specifically, he yelled at female employees but would laugh and joke with male employees. (ECF No. 38-4 at 17-18.) Bjorklund also claims that Griffin made one female co-worker cry and yelled at another. (ECF No. 38-4 at 19-20.) He yelled at Bjorklund in front of customers and when customers complimented Bjorklund, "he didn't care to hear it." (ECF No. 38-4 at 12, 18.) It is undisputed, however, that Griffin was not involved in the decision to terminate Bjorklund. (ECF No. 38-1 at 11; ECF No. 38-6 at 15.) Therefore, even if Griffin harbored a gender bias, this fails to demonstrate that discriminatory animus motivated the decision to terminate Bjorklund's employment. And Bjorklund points to no other adverse employment action perpetrated or proximately caused by Griffin.[5]

---

[5] Bjorklund makes no claim that Golub is liable under a "cat's paw" theory of liability and points to no evidence that would support such a theory. *See Spratt v. Verizon Commc'ns, Inc.*, No. 11-CV-273, 2014 WL 4704705, at *10 (S.D.N.Y. Sept. 17, 2014)("Under the cat's paw theory, an employer may be liable for discrimination if 'a supervisor performs an act motivated by [unlawful] animus that is *intended* by the supervisor to cause an adverse employment action, and . . . that act is a proximate cause of the ultimate employment action.'")(quoting *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011)).

Bjorklund also argues that she was treated less favorably than similarly situated employees outside her protected group. (ECF No. 38-1 at 24.) "[A] showing that similarly situated employees" falling outside the plaintiff's protected class "received more favorable treatment [than the plaintiff] can . . . serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for . . . discrimination." *Adamczyk v. New York Dep't of Corr. Servs.,* 474 F. App'x 23, 27 (2d Cir. 2012) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 43 (2d Cir. 2000) (internal citations omitted)). "To demonstrate evidence of pretext in this manner, the plaintiff must show that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." *Setelius v. Nat'l Grid Elec. Servs. LLC*, No. 11-CV-5528, 2014 WL 4773975, at *16 (E.D.N.Y. Sept. 24, 2014)(internal quotation marks and citations omitted). What constitutes "all material respects" is based on "(1) whether the plaintiff and those [s]he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness. . . . Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than showing that both cases are identical." *Graham*, 230 F.3d at 40 (internal citations omitted).

Bjorklund points to Griffin and Paitaris as comparators. She argues that Griffin failed to record information in the log but was not terminated. (ECF No. 38-1 at 10.) Rather, he received a written warning for not complying with the log policy. (ECF No. 23 at ¶ 19; ECF No. 38-2 at ¶ 19.) But Bjorklund offers no evidence that Griffin - a supervisor - was subject to the same performance and discipline standards. In addition, she has not shown that he engaged in conduct comparable to Bjorklund. Indeed, Griffin was disciplined as the Plaintiff's supervisor when *she*

11

failed to record information properly. Further, the occasion on which she was terminated was her second logbook-related violation. Bjorklund has not shown that Griffin is similarly situated.

Paitaris also is not similarly situated. His conduct – swearing at a customer – is not comparable to Bjorklund's conduct of repeated violations of a food safety policy.[6] Even when viewed in the light most favorable to Bjorklund, there is insufficient evidence for a reasonable juror to conclude that Paitaris was similarly situated to Bjorklund.

In sum, viewing the evidence as a whole, and resolving all factual disputes and drawing all reasonable inferences in Bjorklund's favor, I find that no reasonable jury could conclude that sex-based bias was a motivating factor in Golub's decision to terminate Bjorklund's employment. I thus conclude that Bjorklund has failed to carry her burden at the third stage of the *McDonnell Douglas* framework and that Golub is entitled to summary judgment as to Bjorklund's Title VII sex discrimination claim.

### 2. Bjorklund's Age Discrimination Claim

Bjorklund also alleges that Golub discriminated against her on the basis of age. At the final stage of the *McDonnell Douglas* burden shifting framework, the standards for Title VII claims and ADEA claims diverge somewhat. "ADEA claims face a higher standard — plaintiffs must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the adverse action, as opposed to merely being a motivating factor." *Hamilton v. DeGennaro*, No. 17 CIV. 7170, 2019 WL 6307200, at *8 (S.D.N.Y. Nov. 25, 2019) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009)). This "is not equivalent to a requirement that age was the employer[']s only consideration, but rather that the adverse employment action[ ] would not have occurred without

---

[6] Bjorklund argues that she was terminated for "falsification of records," which she suggests is different from logbook violations. *See* ECF No. 38-2 at 50; ECF No. 38-7; 38-8. Paitaris's conduct is not comparable to either characterization of Bjorklund's conduct.

it." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (emphasis omitted).

Bjorklund asserts that Golub engaged in a "pattern of preferring younger part time employees to older fulltime employees." (ECF No. 38-1 at 13; ECF No. 38-4 at 14.) She testified that Golub moved "Lynn," an older full time produce employee, to part-time status. (ECF No. 38-4 at 13.) She further argues that Golub did not select her and other older female employees to participate in advancement programs while younger employees were selected. (ECF No. 38-4 at 15.) Specifically, she testified that she "applied for assistant manager positions" but "[t]hey kept double-talking me about it, and they never did it, but yet I'm watching all these younger kids going into these programs, so it became disheartening . . . ." (ECF No. 38-4 at 15.)

Bjorklund does not indicate who made the decision to pass her over in favor of younger employees for "these programs," when this decision was made, or what the circumstances were. This evidence, bereft of any specifics, is insufficient to show that the stated reason for Bjorklund's termination was a pretext to conceal age discrimination. *See Brenner v. City of N.Y. Dep't of Educ.*, 132 F. Supp. 3d 407, 419 n.2 (E.D.N.Y. 2015) (disregarding conclusory assertions that former colleagues were replaced by younger employees where no detail or evidence offered), *aff'd*, 659 F. App'x 52 (2d Cir. 2016). Indeed, it is not clear from her testimony whether she specifically applied for the "programs." ECF No. 38-4 at 15 ("I wanted to go into the AI program where they train you to go into other aspects of the store. . . [S]o us older people, even when we voiced interest, they . . . never got back to us . . . ."); *see Petrosino v. Bell Atl.*, 385 F.3d 210, 226-27 (2d Cir. 2004)(to make out a prima facie case of failure to promote, plaintiff must show, among other things, that she applied and was qualified for a job for which the employer was seeking applicants; this element "cannot be established merely with evidence that a plaintiff generally requested promotion consideration. A specific application is required to ensure[ ] that, at the very least, the

plaintiff employee alleges a particular adverse employment action, an instance of alleged discrimination, by the employer.") (internal quotation marks omitted). And while the Plaintiff testified she did apply for assistant manager positions, ECF No. 38-4 at 15, her testimony does not indicate whether younger employees were hired instead of her for these positions, who made these decisions, or what the circumstances were. She points to no evidence that any of the persons who made these decisions were involved in the decision to terminate her employment.

Bjorklund also asserts that Golub replaced her with Paitaris. (ECF No. 38-1 at 21.) A plaintiff may show an inference of discrimination "when an employer replaces a terminated . . . employee with an individual outside the employee's protected class." *Littlejohn v. City of New York*, 795 F.3d 297, 312-13 (2d Cir. 2015). Bjorklund's attempt to demonstrate an inference of discrimination is undermined by the fact that Golub did not hire anyone to replace Bjorklund. (ECF No. 23 at ¶ 58; ECF No. 38-2 at ¶ 58.) Instead her position was "back filled" by a part-time male employee in his mid-50s.[7] (ECF No. 23 at ¶ 58; ECF No. 38-2 at ¶ 58; ECF No. 25 at 14.) Contrary to the assertion in her Local Rule 56(a)2 statement, ECF No. 38-2 at ¶ 58, the evidence in the record does not suggest that Paitaris took over any of Bjorklund's duties after her termination. *See* ECF No. 38-2 at ¶ 58; ECF No. 38-6 at 20-21, 24; ECF No. 25 at 14.

Bjorklund also contends that Schmidt made ageist comments. (ECF No. 38-1 at 13.) Specifically, she testified that Schmidt told her that "new hires are easy to mold and change to get to do what we want" whereas "you older hires resist change." (ECF No. 38-4 at 27.) He also

---

[7] Although the part-time employee who assumed Bjorklund's duties was male, she does not suggest this was evidence of gender discrimination. Nor could she, because the evidence in the record suggests that Griffin, who was not involved in the decision to terminate her employment, was the one who arranged for the part-time male employee to assume her duties. (ECF No. 38-6 at 24; ECF No. 25 at 14.)

14

stated that he was going to "take the store in a new direction" and that "lots of changes are coming." (ECF No. 38-4 at 32-33.)

"Verbal comments may reflect discriminatory intent if there is a nexus between the alleged discriminatory remarks and the adverse employment action." *Seltzer v. Dresdner Kleinwort Wasserstein, Inc.*, 356 F. Supp. 2d 288, 295 (S.D.N.Y. 2005). In determining whether a comment evidences an intent to discriminate, "a court should consider the following factors: (1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process." *Id.* Even if Schmidt was involved in the decision to terminate Bjorklund, contrary to Bjorklund's admission that Human Resources made the decision, ECF No. 38-2 at ¶ 42, any probative value of his remarks is vitiated by the fact that they were made prior to November 18, 2016 – over six months before her June 2, 2017 termination - and were unrelated to the decisionmaking process. (ECF No. 38-4 at 27, 30.) "[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 115–16 (2d Cir. 2007), *abrogated in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009). *See, e.g.*, *Buckman v. Caylon Sec. (USA) Inc.*, 817 F. Supp.2d 322, 336 (S.D.N.Y. 2011) (finding that "[a]lthough a reasonable juror could find that the remark itself was discriminatory," a remark made in isolation five months before plaintiff's discharge was "too remote in time and context to support a reasonable inference" that discharge was a result of race discrimination).

Even after reviewing the record in the light most favorable to Bjorklund, I conclude no reasonable juror could find that age was the but-for cause of Golub's decision to terminate Bjorklund's employment.[8]

## IV.	CONCLUSION

Because the evidence is such that no reasonable jury could decide in Bjorklund's favor on either of her claims, I find that there is no genuine issue for trial.  Defendant Golub's motion for summary judgment (ECF No. 21) is therefore GRANTED.


IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.


Dated:		Hartford, Connecticut
		February 25, 2020

---

[8] Bjorklund states that Golub failed to pay her for her vacation time.  (ECF No. 38-1 at 2, 15.)  To the extent that she asserts that this was an adverse employment action, she does not brief the argument that it was motivated by either age or gender bias or provide any additional evidence other than that already discussed.  For the reasons set forth above, she has not shown that it was motivated by discriminatory intent.